**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **DAVID FUCICH and ELLEN FUCICH** | * | **CIVIL ACTION NO: 6:20-CV-00978** |
| **Versus** | * | **JUDGE: ROBERT W. SUMMERHAYS** |
| **GREAT DIVID INSURANCE, COMPANY, ET AL** | * | **MAGISTRATE: CAROL B. WHITEHURST** |

---

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO STRIKE OR LIMIT TESTIMONY AND REPORTS OF PLAINTIFFS' LIFE CARE PLANNER AND ECONOMIST

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, through undersigned counsel, comes Plaintiffs, DAVID FUCICH and ELLEN FUCICH, who respectfully submits this Opposition to Defendants' *Daubert* Motion to Strike or Limit Testimony and Reports. Defendants seek an Order striking the opinions of Plaintiffs' Vocational Counselor and Life Care Planner, Elizabeth Peralta, as well as the opinions of Plaintiffs' Economist, Dr. Randolph Rice. Defendants contend that the opinions of the experts are not supported by reliable methodology. More specifically, Defendants argue (1) that Ms. Peralta failed to reference any medical records that serve as the basis for her recommendations and (2) that Mr. Rice's calculations are based on this malpractice. At the heart of their argument, the Defendants mistakenly criticize the life plan's underlying evidence as being indicative of *optional* treatments and exhibit Ms. Peralta as conclusory when she is far from it. On the contrary, Ms. Peralta's opinion clearly refers to the findings of Mr. Fucich's medical providers for all her assertions. Regardless, just because the Defendants do not agree with the evidence which Ms. Peralta puts forth does not make her methodology inadmissible. It is the Court's job to weigh the evidence at trial and decide which evidence is most credible. The Court cannot exclude an expert

simply because the opposing party disagrees with their findings. Since Ms. Peralta will not be excluded, Dr. Rice will also not be excluded by extension since his opinion relies wholly on the admissibility of the former expert.

## I. The Exclusion of an Expert's Opinion is the Exception, Not the Rule.

Federal Rule of Evidence 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" should testify if their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." In addition, an expert witness must be reliable by basing their opinion on sufficient facts. *See* Fed. R. Evid. 702(b)-(d); *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). *Daubert v. Merrell Dow Pharmaceuticals, Inc.* articulates that the purpose of Rule 702 is to bestow the roll of "gatekeeper" to district courts so that they may ensure that all expert testimony is relevant and reliable. 509 U.S. at 596-97. However, "a court's role as a gatekeeper does not replace the traditional adversarial system, and '[a] review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *Thomas v. W&T Offshore, Inc.*, No. 16-14694, 2018 WL 4223589, at *3 (E.D. La. Aug. 27, 2018). Hence, Louisiana district courts may not exclude an expert's opinion as long as (1) the expert is qualified, (2) the expert's opinion is relevant, and (3) the expert's methodology is reliable. The only factor which the Defendant challenges in their motion and memorandum is Ms. Peralta's reliability. Therefore, the first two factors are assumed to be established.

### A. Horizontal Stare Decisis Supports the Fact that Ms. Peralta's Report is Reliable and, Therefore, Admissible.

The specific issue of whether a life care expert's opinion is reliable when it is based on their review of medical records, consultation with medical providers, and an interview with the Plaintiff is well settled in this Court. Generally, a life care planner must establish "by a

preponderance of evidence" that their opinion is reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). In other words, an expert opinion is reliable when it is based on evidence "demonstrating the treatment [Plaintiff] will ***probably*** need, not simply the treatment that he *might* need." *Lawrence v. Great Lakes Dredge & Deck Co., of La.*, No. 17-9775, 2019 WL 9045085, at *1 (E.D. La. Apr. 24, 2019) (emphasis added). Noticeably, there is no such standard among any statutes or case law that Ms. Peralta has to prove the "necessity" of Plaintiff's treatment, only that the treatment is **probably** needed. Ms. Peralta dutifully and exclusively relies on treatment recommendations from Plaintiff's medical providers in their medical records and consultations.

This Court has previously held that a life care expert, who is *prima facie* qualified, makes reliable treatment recommendations as long as their opinion is reasonably "consistent" with those of the Plaintiff's medical providers. *See Fuselier v. Everest Nat'l Ins. Co.*, No. 2:10-CV-01456, 2021 WL 3179810, at *2 (W.D. La. July 26, 2021) (citing *Durr v. GOL, LLC*, No. 18-3742, 2019 WL 6464971 (E.D. La. Dec. 2, 2019)). In *Fuselier v. Everest Nat'l Ins. Co.*, defendants sought to exclude the testimony of plaintiff's expert life care planner. *See* 2021 WL 3179810 at *1. The Western District Court reasoned that since the life care planner based his review on "Plaintiff's medical records as presented by treating physicians, his MRI studies, as well as his telephonic interview of Plaintiff," his opinion was admissible. *Id.* at *3. Further, this Court agreed with other district courts within the Fifth Circuit that "there is no requirement that an expert life care planner consult with treating physicians or independent medical doctors before formulating a life care plan." *Id.* at *2 (citing *Durr*, 2019 WL 6464971). Likewise, this Court ruled in an even more recent decision that if a life care planner is credible, provides relevant testimony, and bases their opinion on the medical opinions of a specified physician, even if their opinion does not perfectly conform to that of the physician, then their testimony is still admissible. *Gonzalez v. Sea Fox Boat Co.*, No.

2:19-CV-00130 LEAD, 2022 WL 1492273, at *1 (W.D. La. May 10, 2022). This further implies that a life care expert's reliance on a medical provider's records and their own expertise as a life care planner is sufficient to establish their reliability. *Id.* Finally, the Eastern District Court concurs that "life care planners [are allowed] to testify as to future healthcare needs, predicated upon the testimony of treating physicians as to the reasonable need for such care, and the cost of such care." *Snider v. N. H. Ins. Co.*, No. 14-2132, 2016 WL 3193473, at *2 (E.D. La. June 6, 2016).

In this case, Ms. Peralta relies on Plaintiff's medical records, her interview with Plaintiff, *and* her consultations with Plaintiff's treating medical physicians to establish that her treatment recommendations are more probably than not needed.[1] This practice exceeds the threshold that this Court adhered to in *Fuselier* and *Gonzalez* and is congruent with the current "Standards of Practice for Life Care Planners" which states, in part: "The life care planner performs comprehensive assessment through the process of data collection involving multiple elements and sources" including "obtaining information from records, evaluee …, and relevant treating or consulting health care professionals and others."[2] Ms. Peralta not only cited the medical records she reviewed, but she also incorporated an organized analysis of each record along with a short summary of her consultations with each of the treating physicians.[3] Ms. Peralta recounts all the physician's treatment recommendations straight from their dated medical reports and all the treatments that Plaintiff's physicians stated were "more probably than not" needed during their consultations.[4] She does so as evidence that her treatment recommendations are, indeed, reliable. To supplement her conclusions further, she attached more in-depth summaries of her consultations with each

[1] Peralta Report and Life Care Plan, dated October 19, 2023, attached hereto as Exhibit "A," at p. 1
[2] https://cdn.ymaws.com/rehabpro.org/resource/resmgr/files/RehabPro/Standards_of_Practice_for_Li.pdf at p. 8.
[3] *See* Exhibit A (Peralta Report), at pp. 3-7
[4] *Id.*

physician which also exhibit each physician's signature at the bottom of their respective summary.[5] Additionally, in her actual breakdown of Plaintiff's Life Care Plan, Ms. Peralta cites each treatment recommendation to a *specific* physician's opinion in the far-right column.[6] For example, she recommends that Plaintiff will more probably than not need physical therapy 18 times every two years for ten years estimated between $5,400.00 - $11,250.00 and cites Dr. Baronne.[7] The Court will find that this recommendation is straight from Ms. Peralta's consultation with Dr. Baronne dated October 12, 2023,[8] and that her Summary of Conference dated October 19, 2023, and signed by the same physician supports this: "[Plaintiff] will more probably than not need routine physical therapy every two years on average for 10 years, to include an initial evaluation, followed by three visits per week for six weeks."[9] Further, this treatment is consequential to and consistent with Ms. Peralta's reference to Dr. Baronne's recommendation that Plaintiff receive an ACDF at C5-7 in his medical record dated September 16, 2021.[10] Ms. Peralta exhibits her reliability through her reliance on medical records and testimony from Plaintiff's treating physicians and thorough transparency of that fact in her Life Care Plan. In fact, she exceeded the standard duties required of a Life Care Planner under this Court's own precedence.

### B. The Defendants Misrepresent Ms. Peralta's Methodology and Fail to Provide Any Evidence for Her Exclusion.

The Defendants do not dispute Ms. Peralta's credibility nor her opinion's relevance to Plaintiff's case. Instead, the Defendants' entire sixteen-page argument for exclusion is based on

---

[5] *See* Dr. Weir Summary of Conference, dated October 19, 2023, attached hereto as Exhibit "B"; *see* Dr. Baronne Summary of Conference, dated October 19, 2023, attached hereto as Exhibit "C"; *see* Dr. Williams Summary of Conference, dated October 19, 2023, attached hereto as Exhibit "D".
[6] *See* Exhibit A (Peralta Report), at pp. 7-11.
[7] *Id.* at p. 9.
[8] *Id.* at p. 6.
[9] Exhibit C (Dr. Baronne Summary of Consultation), at p. 2.
[10] Exhibit A (Peralta Report), at p. 6; *See also* Dr. Baronne Chart Summary for Fucich, David R, dated September 16, 2021, attached hereto as Exhibit "E," at p. 4.

Ms. Peralta's reliability and can be summarized with the following two sentences from the bottom of page thirteen: "Ms. Peralta failed to cite to any written report, medical record, or deposition testimony supporting that Mr. Fucich will more probably than not need the treatment she recommends. Thus, Ms. Peralta's opinions and recommendations are highly speculative and without factual foundation…" This assertion is blind and meritless. In support of their argument, Defendants recount the court's reasoning in *Vaughn v. Hobby Lobby Stores, Inc.*, *Snider v. N.H. Ins. Co.*, and *Lawrence v. Great Lakes Dredge & Dock Co., L.L.C.*; however, each of these cases is distinguishable from the present.

In *Vaughn*, the plaintiff's life care expert inflated the plaintiff's life care plan by including her own independent diagnoses and treatment recommendations. *Vaughn v. Hobby Lobby Stores, Inc.*, No. 6:19-cv-00293, 2021 WL 2131867, at *6 (W.D. La. May 25, 2021). For instance, she independently recommended three spine intervention procedures without evidence from plaintiff's medical records or consulting plaintiff's treating physicians. *Id.* at *4. In attempting to substantiate her findings, the *Vaughn* plaintiff's life care expert went so far as to list her own name as a source for her findings after admitting that she was not plaintiff's treating physician. *Id.* at *4. Furthermore, the Court noted that the life care planner's significant revisions to plaintiff's life care plan within months and unsubstantiated medical costs amounting to $1,679,363.64 supported a finding that her methodology was not reliable. *Id.* at *3, 7.

Here, Ms. Peralta never claims to be the source for any of Plaintiff's treatment recommendations.[11] Instead, her recommendations are clearly grounded in Plaintiff's medical records or consultations with Plaintiff's physicians and only include *probable* expenses. For example, the two major surgeries, which make up $267,399.29 of the $331,539.49 total estimation,

[11] *See* Exhibit A (Peralta Report), at pp. 7-11.; *See also* Peralta Deposition Transcript attached hereto as Exhibit "F," at p. 7:5-15.

are substantiated in Plaintiff's medical records and confirmed in Ms. Peralta's consultations.[12] First, in Dr. Baronne's September 16, 2021, medical report, which is cited and summarized in Ms. Peralta's Life Care Plan,[13] he notes that "C5-C6 C6-C7 anterior cervical discectomy and fusion [(ACDF)] is indicated to prevent further neurological changes and return the patient back to functional status."[14] In Ms. Peralta's consultation with Dr. Baronne, again "Dr. Baronne noted that [Plaintiff] will more probably than not need an ACDF at C5-7."[15] Second, in Dr. Williams's September 23, 2022, medical report, which is cited and summarized in Ms. Peralta's Life Care Plan,[16] he notes that since "[Plaintiff] has had symptoms now persistently for 4 years he is likely to require or may require an operation … it would include an acromioclavicular joint resection, decompression, subscapularis repair and biceps tenodesis."[17] Dr. Williams recommended that Plaintiff first try a "subacromial injection and therapy" before going through with surgery.[18] However, Ms. Peralta's consultation with Dr. Williams revealed that Plaintiff experienced "minimal relief" following the injection and that he will "more probably than not need surgery to fix his condition."[19] Defendants' lack of evidence to the contrary is telling that Ms. Peralta's methodology was, in fact, reliable and in line with her expertise. It should also be noted that the amounts denoted represent the "high" estimations of Plaintiff's Life Care Plan, not the "low" estimations which were also listed.[20]

Both *Snider* and *Lawrence* warn the same life care planner against relying on unspecified sources for treatment recommendations. *See Snider*, 2016 WL 3193473 at *2; *see Lawrence*, 2019

---

[12] *See* Exhibit A (Peralta Report), at pp. 7-9, 11.
[13] *Id.* at p. 6.
[14] Exhibit E (Dr. Baronne Chart Note), at p.3.
[15] Exhibit A (Peralta Report), at p. 6.
[16] *Id.* at p. 6.
[17] Dr. Williams Chart Notes, dated September 23, 2022, attached hereto as Exhibit "G," at p. 3.
[18] Exhibit A (Peralta Report), at p. 6; Exhibit G (Dr. Williams Chart Notes), at p. 3.
[19] Exhibit A (Peralta Report), at pp. 6-7.
[20] *Id.* at p. 11.

WL 9045085 at *2. Courts require specificity in life care plans. *Lawrence*, 2019 WL 9045085 at *1. The life care planner's independent diagnoses, as was the case in *Snider*, and claims of endorsements as a substitute for medical records, as was the case in *Lawrence*, were not specific enough. *Snider*, 2016 WL 3193473 at *2; *Lawrence*, 2019 WL 9045085 at *1. Of note, the Eastern District Court still did not order the expert testimonies' exclusion in either case. *Snider*, 2016 WL 3193473 at *2; *Lawrence*, 2019 WL 9045085 at *1. Instead, they deferred judgement until trial and provided plaintiffs the opportunity to supplement their life care planner's opinions with more specific sources. *Snider*, 2016 WL 3193473 at *2; *Lawrence*, 2019 WL 9045085 at *2

In this case, Ms. Peralta identified a treating physician on which she based each of her treatment recommendations.[21] She cites specific medical records and consultations as the basis for her findings and only then supplements her sources with summaries bearing each treating physician's signature. Ms. Peralta's practices sharply contrast with the life care planner's practices in *Snider* and *Lawrence*. Ms. Peralta was specific and transparent, whereas the latter was not. Therefore, the Defendants fail to provide any persuasive authority to indicate that Ms. Peralta's testimony should be excluded.

The Defendants offer the two alternative assertions that (1) since Ms. Peralta did not physically examine Plaintiff her opinion is unreliable, and that (2) Ms. Peralta failed to perform a comprehensive assessment because her opinion relied on records and testimony favorable to the Plaintiff. First, there is absolutely no requirement that life care planners must be a licensed physician capable of physically examining their client. The Defendants' suggestion that there is such a requirement is false and misleading. The whole reason why a life care planner's estimations are reliable is because they have relied on the diagnoses of plaintiff's treating physicians. Nowhere

[21] *Id.* at pp. 7-11.

is there a requirement that life care planners must independently diagnose the plaintiff; in fact, Courts warn against this as seen in *Snider*. 2016 WL 3193473 at *2. Second, the Defendants merely deny that Ms. Peralta met the standards of practice for life care planners without ever pointing to any evidence for the contrary other than claiming that her methods were "self-serving" to Plaintiff. Defendants also ignore the fact that Ms. Peralta consulted with each of Plaintiff's treating physicians. Experts are entitled to rely on qualified sources, as Ms. Peralta did here in her reliance on Plaintiff's treating physicians and medical records. Defendants' argument in this respect is baseless since an expert opinion's favorability or unfavourability toward a party is certainly not grounds for its inadmissibility.

Finally, the Defendants filed this same *Daubert* motion against the same life care planner and economist in *Deanna Sholas v. Great Divide Ins. Co.*, filed in the 15th JDC for the Parish of Lafayette, Louisiana.[22] They argued again that Ms. Peralta "failed to cite any written report, medical record, or deposition testimony supporting that [p]laintiff will more probably than not need the additional … treatment."[23] Furthermore, the evidence they put forth, which was substantially more than Defendants included in their most recent *Daubert* motion, was irrelevant to the question of *admissibility*.[24] The plaintiff responded with a memo in opposition in which they countered that Ms. Peralta's methodology was reliable and that the Defendants had misrepresented and even omitted her conferences with plaintiff's physicians.[25] The Court agreed with the plaintiff's opposition and **<u>denied the Defendants' *Daubert* motion</u>** to strike Ms. Peralta's and Mr. Rice's testimonies for the same reasons that this Court should do so here.

---

[22] *See* Great Divide Ins. Co.'s Memorandum in Support of Defendant's *Daubert* Motion to Strike or Limit Testimony and Reports of Plaintiff's Life Care Planner and Economist, dated April 24, 2024, attached hereto as Exhibit "H."
[23] *Id.* at p. 11.
[24] *See id.* at pp. 8-10.
[25] *See* Plaintiff's Memorandum in Opposition to Defendant's *Daubert* Motion to Strike or Limit Testimony and Reports of Plaintiff's Life Care Planner and Economist, dated May 10, 2024, attached hereto as Exhibit "I."

### C. Any Remaining Contentions as to the Bases and Sources of the Report Affect the Weight of the Opinion Rather than its Admissibility.

Again, the Rule 702/*Daubert* evidentiary framework does not replace the "traditional adversarial system." *Thomas*, 2018 WL 4223589 at *3. It remains essential that, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Federal Rule of Evidence 703 grants the admissibility of an expert's opinion when its underlying bases or sources are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. This implies that questions regarding the validity of the bases and sources of an expert's opinion affect the **weight** of the opinion and not its **admissibility**. *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F. 3d 1074, 1077 (5th Cir. 1996).

The Defendants' contention that Ms. Peralta's opinion is unreliable because the Rule 26 medical records she relied on did not indicate "necessary" treatments ignores Rule 703. Whether or not Plaintiff's treating physicians were sound in their findings and recommendations is an argument based on the weight of the opinion, rather than its admissibility. Not only this, but this Court held that, "the extent to which [a life care expert's] treatment recommendations conform with that of the treating physician with whom she consulted impact the weight rather than admissibility of her testimony." *Gonzalez*, 2022 WL 1492273 at *2. Hence, as long as Ms. Peralta shows that she relied on an expert who is qualified to form opinions on Plaintiff's probable treatments, then her opinion is admissible. The evidence above shows that Ms. Peralta satisfied her burden. The extent to which her treatment recommendations conform to those the physicians'

recommended and the reasonableness of whether such recommendations are probably needed are questions reserved for trial.

## II. Dr. Rice's Opinion is as Equally Admissible as Ms. Peralta's.

Last, the Defendants seek to exclude Dr. Rice's report which calculates the present value assessment of Ms. Peralta's Life Care Plan. Because Ms. Peralta's opinion is admissible and Dr. Rice's opinion relies on its admissibility,[26] Dr. Rice's opinion must also be admissible under *Daubert*. Further, Dr. Rice's report will undoubtedly be invaluable to this Court since it would be impossible for the Court to estimate the value of the Plaintiff's life-long medical needs on its own. Therefore, the Defendants' challenge to Dr. Rice's opinion should be denied as an extension of this Court's denial of the Defendants' motion against Ms. Peralta.

Any challenges that the Defendants raised to Ms. Peralta or Dr. Rice's opinions only bear on the weight and not the admissibility of their testimony. To the extent that the Defendants disagree with these experts' opinions is merely fuel for cross-examination.

## CONCLUSION

The Defendants provided this Court with no reason, much less a persuasive one, to exclude Ms. Peralta and Dr. Rice. Accordingly, their Motion to Strike should be DENIED.

*{Signature Block and Certificate on Following Page}*

[26] Rice Deposition Transcript attached hereto as Exhibit "J," at p. 30:16-21.

Respectfully Submitted:

**LABORDE EARLES LAW FIRM, L.L.C.**

*/s/ Robert M. Marionneaux, Jr.*

**DAVID C. LABORDE, SR.** (Bar#20907)
**ROBERT M. MARIONNEAUX, JR.,**
(Bar#23848)
1901 Kaliste Saloom Rd.
P.O. Box 80098 (70508)
Lafayette, La. 70598
Phone: (337) 261-2617 Fax: (337) 261-1934
*Attorney for Claimants*
*Service of Process Email Only:*
*service@onmyside.com*

****For all non-service-related communication Please direct to david@onmyside.com, rob@onmyside.com & kathy@onmyside.com*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above pleading has been served upon all counsel of record via the Court's electronic notification system.

____/s/: *Robert M. Marionneaux, Jr.*___