| | | |
|---|---|---|
| DEANA SHOLAS, ET AL. | * | 15[TH] JUDICIAL DISTRICT COURT |
| VERSUS | * | DOCKET NO. C-20213591 |
| GREAT DIVIDE INSURANCE, ET AL. | * | LAFAYETTE PARISH, LOUISIANA |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' DAUBERT MOTION TO STRIKE OR LIMIT TESTIMONY AND REPORTS OF PLAINTIFF'S LIFE CARE PLANNER AND ECONOMIST**

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, DEANNA SHOLAS, who respectfully files this Opposition to Defendants' Daubert Motion to Compel Independent Medical Examination. Defendants seek an Order striking the opinions of Plaintiff's Vocational Counselor and Life Care planner, Elizabeth Peralta, as well as the opinions of Plaintiff's Economist, Dr. Randolph Rice. Defendants contend that the opinions of the experts are not supported by reliable methodology. In reality, Defendants do not actually challenge the methodology of the experts. Rather, Defendants simply attack the underlying evidence relied upon by Ms. Peralta, most of which was obtained directly from Ms. Sholas' medical records, consultations with her treating physicians, and Ms. Sholas directly. However, as is always the case, Plaintiffs' and Defendants' experts based their opinions on conflicting and often contradictory evidence. In fact, Defendants' experts in this case simply disregard all of the medical records and recommendations from Plaintiff's numerous and well-respected treating physicians spanning four fields of medicine in favor of a single defense AMO doctor – that of the often limited and excluded Dr. Douglas Bernard from New Iberia, Louisiana. However, just because the Defendants don't agree with the evidence used by Ms. Peralta, it doesn't make her methodology any less admissible. It is the Court's job to weigh the evidence at trial and decide which evidence is most credible. However, the Court cannot exclude an expert simply because their may be contradictory evidence to that which the expert relied upon.

**A. The Court Has Considerable Discretion in Admitting Expert Testimony; The Exclusion of an Expert's Opinions is the Exception Rather than the Rule.**

Code of Evidence article 702 and the *Daubert/Foret* evidentiary framework,[1] which govern the admissibility of expert witnesses testimony, provide that "a witness qualified as an expert by

[1] *LaBauve v. Louisiana Med. Mut. Ins. Co.*, 2021-00763 (La. 4/13/22), 347 So. 3d 724, 728 ("In *State v. Foret*, 628 So.2d 1116, 1122-23 (La. 1993), we adopted the four non-exclusive factors established by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to be considered by district courts in determining the admissibility of expert testimony...").

Exhibit "I"

'knowledge, skill, experience, training or education' should be allowed to testify if his 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'"[2] The district court "has great discretion concerning the admissibility and relevancy of evidence, and has wide latitude to determine whether an expert has the competence, background, and experience to qualify."[3] Notably, "[a] court's role as a gatekeeper does not replace the traditional adversary system, and '[a] review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.'"[4] As it is well-established by now, (1) "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence,"[5] and (2) challenges to the bases and sources of an expert's opinion affect the ***weight*** to be given to that opinion—not its ***admissibility***.[6]

The Louisiana Supreme Court has adopted a three-part test in evaluating the admissibility of expert testimony under article 702. Admission of expert testimony is proper where "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."[7] When evaluating testimony under these factors, "[t]he trial court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." As with all other admissible evidence, expert testimony is fodder for cross-examination.[8]

---

[2] *MSOF Corp. v. Exxon Corp.*, 04-0988 (La. App. 1 Cir. 12/22/05), 934 So. 2d 708, 717 (quoting La. Code Evid. art. 702); *Pollard v. 21st Century Centennial Ins. Co.*, 21-65 (La. App. 5 Cir. 12/23/21), 334 So. 3d 1013, 1018.

[3] *Pollard*, 334 So. 3d at 1018. *See also City of Kenner v. Parker*, 05-250 (La. App. 5 Cir. 11/29/05), 918 So. 2d 479, 484 ("The trial judge has broad discretion in determining whether to admit or exclude expert testimony, and this Court will not overturn that decision absent a showing of an abuse of that discretion. [] Included in that discretion is the trial judge's decision on whether *Daubert's* specific factors are reasonable measures of reliability in a particular case.") (internal quotations omitted).

[4] *Thomas v. W&T Offshore, Inc.*, 2018 WL 4223589, at *3 (E.D. La. 2018). *See also Gonzalez v. Sea Fox Boat Co. Inc.*, 2022 WL 1492298, at *2 (W.D. La. May 10, 2022) ("Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper 'does not replace the traditional adversary system and the place of the jury within the system.'") (internal citation omitted).

[5] *Blair v. Coney*, 2019-00795 (La. 4/3/20), 340 So. 3d 775, 781; *Rhodes v. AMKO Fence & Steel Co., LLC*, 21-19 (La. App. 5 Cir. 10/28/21), 329 So. 3d 1112, 2.

[6] *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."); *Lafayette City-Par. Consol. Gov't v. Pers.*, 2012-0307 (La. 10/16/12), 100 So. 3d 293, 298 ("[T]he character of the evidence upon which the expert bases an opinion affects only the weight to be afforded the expert's conclusion."); *MSOF Corp. v. Exxon Corp.*, 2004-0988 (La. App. 1 Cir. 12/22/05), 934 So. 2d 708, 720.

[7] *Cheairs v. State ex rel. Dep't of Transp. & Dev.*, 03-0680 (La. 12/3/03), 861 So. 2d 536, 542, *on reh'g in part* (Jan. 16, 2004) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).

[8] *Jones v. Black*, 13-1889 (La. App. 1 Cir. 5/2/14), 145 So. 3d 402, 410.

1. **Ms. Peralta and Dr. Rice are Eminently Qualified; The Defendants' Inability to Challenge those Qualifications is Telling.**

The first of the three-part test that the Louisiana Supreme Court has adopted in evaluating the admissibility of expert testimony under Article 702 is whether the expert is qualified to testify competently regarding the matters he or she intends to address.[9] Even a cursory review of the Defendants' motion demonstrates that the Defendants do not dispute Ms. Peralta or Dr. Rice's qualifications. Nor can the Defendants credibly do so.

Ms. Peralta received her Bachelor of Administration (B.A.) in psychology from Southeastern Louisiana University as well as her Masters (M.Ed.) in Counseling from Southeastern Louisiana University.[10] Ms. Peralta is a Licensed Rehabilitation Counselor (License #788), Certified Rehabilitation Counselor (Cert. #00296328) and a Certified Life Care Planner (Cert. #1543).[11] She is a member of the International Association of Rehabilitation Professionals and has been serving as a Vocational Rehabilitation Counselor for over ten (10) years.[12] Ms. Peralta has been repeatedly qualified to testify in the fields of vocational rehabilitation and life care planning and has testified in numerous Louisiana state and federal courts including the Fifteenth Judicial District Court and the Western District of Louisiana.[13] Thus, there can be no question that Ms. Peralta is imminently qualified to serve as an expert in the fields of vocational rehabilitation and life care planning.

With regard to Dr. Rice, he received his Bachelor of Arts (A.B.) in Economics & Mathematics from Centre College of Kentucky, his Masters (M.A.) in Economics from the University of Kentucky, and his Doctorate (Ph.D.) in Economics from the University of Kentucky.[14] Dr. Rice served as a Professor of Economics at Louisiana State University from 1983 - 2000, including serving as the Chairman of the Department of Economics from 1996 - 2000. He has held the title of Professor Emeritus, Department of Economics since 2000. This can be contrasted with Defendant's economics' experts, Edward Comeaux who received only a Bachelor of Science (B.S.) in Accounting from Nichols State University and Leah Schaff who holds a Bachelor of Science (B.S.) in Accounting from Louisiana State University. Dr. Rice has been repeatedly qualified to testify in the field of economics and has testified in numerous Louisiana

[9] *Cheairs v. State ex rel. Dep't of Transp. & Dev.*, 03-0680 (La. 12/3/03), 861 So. 2d 536, 542, *on reh'g in part* (Jan. 16, 2004) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993)).
[10] Exhibit A - Petitioners Expert Witness List, p. 51-55.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*, p. 67.

state and federal courts including the 15th Judicial District Court and the Western District of Louisiana.[15] Thus, there can be no question that Dr. Rice is imminently qualified to serve as an expert in the field of economics.

Again, Defendants do not contest the qualifications of either expert because they are incontestable.

**2. Defendants Misrepresent The Methodology Used By Ms. Peralta By Omitting Key Parts of Her Reports.**

Defendants attempt to attack the methodology employed by Ms. Peralta by suggesting that Ms. Peralta was the source of the increase in the future medical costs in her updated Life Care Plan issued on April 4, 2022. A review of her report indicates that the increase in the projected future medical costs between her original expert report issued on October 7, 2022 and the updated report on April 4, 2024 was due to an increase in the expected duration that Ms. Sholas would receive Botox injections. Defendants claim that Ms. Peralta is not one of Ms. Sholas' treating physicians, is not a medical doctor, and has not diagnosed or treated Ms. Sholas for any medical condition. All of which is certainly true. They then indicate that Ms. Peralta cannot form an opinion regarding Plaintiff's diagnosis, treatment, or the necessity of her future medical treatment and prescription drugs. Again, this is true. However, Defendants also claim that Ms. Peralta failed to cite to any written report, medical record, or deposition testimony supporting the opinions in her updated report regarding the change in projected duration of the Botox injections. This is certainly ***not*** true. In providing justification for this claim, Defendants attach an incomplete copy of Ms. Peralta's report. ***Defendants omitted several key parts of Ms. Peralta's expert reports.*** Specifically, the copies of Ms. Peralta's reports attached to Defendants' motion is missing all of the actual written summaries of Ms. Peralta's conferences with Ms. Sholas' treating physicians that were reviewed and signed by the doctors. Defendants only included the main body of Ms. Peralta's report in the attachments to their motion. However, the full reports were filed into the record (and served on Defense counsel) of this matter as part of Plaintiff's Expert Witness List on April 10, 2024.

If the Defendants had actually attached the full expert reports, they would have seen that the increase in the duration of the Botox injections came directly from neurologist Dr. David Wier. Ms. Peralta originally held a consultation with Dr. Weir on September 1, 2022 prior to preparing her original report. She then provided a detailed summary of that conference to Dr. Weir on

[15] *Id.*, p. 76, 89.

October 7, 2022. This summary outlined all of the opinions and recommendations expressed by Dr. Weir at the conference.[16] Dr. Weir reviewed the summary and actually signed off on it on October 10, 2022.[17] The recommendations were as follows:

David Weir, MD
RE: Deanna Sholes
Page 2

*Please sign and return this form to me. For your convenience, keep a copy for your records.

Summary of Conference:

You recommend the following from a more probable than not standpoint related to Ms. Deanna Sholes' injuries sustained on 07/15/2020:

- You last saw Ms. Sholes on 07/25/2022 for follow-up and Botox administration. You reported that she will continue to need Botox injections (200 units) every three months on average for three years, at which time the need for continued Botox injections will need to be reassessed.
- You recommend that Ms. Sholes be seen for follow-up every three months on average for the next three years, at which time her treatment needs will be re-evaluated.
- You noted that Ms. Sholes was previously prescribed Aimovig 140 mg injections monthly; however, you noted that you recently prescribed Ajovy 225 mg injections monthly due to her lack of insurance coverage for Aimovig. Ms. Sholes will continue to need medication including Ajovy 225 mg every 30 days for three years, at which time her medication needs will need to be re-assessed.
- Ms. Sholes will require Nurtec ODT 75 mg, a total of 10 tablets per month (120 tablets per year) for one year and then a total of 10 tablets per quarter (40 tablets per year) for two additional years, at which time her medication needs will be reassessed.
- You recommend an annual CBC and CMP for the next three years.
- You do not believe that Ms. Sholes has any cognitive restrictions and limitations at this time. However, you noted that the frequency and intensity of her headaches will more probably than not preclude her from work for a total of two to three days per quarter, or eight to 12 days per year, for three years in duration, at which time this will need to be reassessed.

Should you have any additional recommendations or comments, please note in the space below. Please define the frequency and duration of such service/treatment.

COMMENTS:

[ ] I agree with the above summary of recommendations with noted changes with comments.

Signature: ______ David Weir, MD Date 10/10/22 [18]

Ms. Peralta held a follow up consultation with Dr. Weir on March 20, 2024 in advance of preparing her updated report.[19] A summary of that conference was prepared and provided to Dr.

[16] *Id.*, p. 24.
[17] *Id.*
[18] *Id.*
[19] *Id.* p. 45.

Wier. The summary was reviewed and signed off on by Dr. Weir on April 8, 2024.[20] The signed summary indicates:

David Weir, MD
RE: Deanna Sholas
Page 2

*Please sign and return this form to me. For your convenience, keep a copy for your records.

Summary of Conference:

You recommend the following from a more probable than not standpoint related to Ms. Deanna Sholas' injuries sustained on 07/15/2020:

- Ms. Sholas will more probably than not continue to need Botox injections (200 units) every three months on average life expectancy unless another treatment becomes available with less side effects, and is equivally effective.
- She will more probably than not need follow-up visits with a neurologist every three months on average life expectancy.
- Ms. Sholas will more probably than not need medication such as Aimovig 140 mg every 30 days and Nurtec ODT 75 mg, a total of 20 tablets per quarter (80 tablets per year) through life expectancy.
- You recommend a CBC and CMP once per year on average through life expectancy to evaluate for potential side effects of her medications.
- You do not believe that Ms. Sholas has any cognitive restrictions and limitations at this time. However, you noted that the frequency and intensity of her headaches will more probably than not preclude her from working a total of two to three days per quarter, or eight to 12 days per year, through the remainder of her work life expectancy.
- It is your expert medical opinion that Ms. Sholas' injuries and the medical treatment that you have provided to date, as well as your recommendations for future treatment as noted above, are more probably than not a result of the incident that occurred on 07/15/2020.

Should you have any additional recommendations or comments, please note in the space below. Please define the frequency and duration of such service/treatment.

COMMENTS:

[ ] I agree with the above summary of recommendations with noted changes with comments.

Signature: [signature] David Weir, MD    4/8/24 Date

21

Both of these documents were included as part of Ms. Peralta's original and updated expert reports that were filed by Plaintiff with the Clerk of Court (and served upon Defense Counsel) on April on 10, 2024. Yet both of these pages, as well as all the other summaries with Ms. Sholas' treating physicians, were omitted in the copies provided with Defendants' motion. As the Court can easily see from the above documents, Dr. Wier changed the expected duration of the Botox injections from three years to life. Thus, this change came directly from Dr. Wier, not Ms. Peralta

[20] *Id.*
[21] *Id.*

as claimed in Defendants' motion. Thus, Defendants' claims that Ms. Peralta's life care recommendations are not based on actual medical records or evidence is completely false. Ms. Peralta met with each of Ms. Sholas' treating physicians and based her report off the recommendations from those physicians.

**3. Ms. Peralta is Allowed to Rely On Conflicting Evidence; Doing So Does Not Affect Her Methodology**

As noted above, while Code of Civil Procedure article 1425(F)(1) allows the filing of a *Daubert* motion to challenge an expert witness, that challenge must be directed at the ***reliability of the methods*** employed by the expert, not the evidence relied upon by the expert.[22] To be clear, the Defendants did not—and cannot—dispute Dr. Peralta's methodology she employed in reaching her conclusions with regard to Ms. Sholas vocational assessment and lost wage opinions. Rather, Defendants attempt to attack the evidence which Ms. Peralta relied on with regard to her vocational assessment. Defendants cite to what they believe to be conflicting evidence in her wage records and education transcripts. However, this does not provide a valid basis for a *Daubert* challenge. So, in essence, the Defendants' *Daubert* motion invokes the *Daubert* evidentiary framework in name, only.[23] Rather, it is a critique of the evidence which Ms. Peralta relied upon.

As shown throughout both of their reports, Ms. Peralta and Dr. Rice adhere to peer-reviewed methodology, which is thoroughly outlined in their reports. Ms. Peralta's methodology—the same methodology advocated by the International Association of Rehabilitation Professionals — involved, *inter alia*, applying her education, training, skill, and professional experience as a Licensed Rehabilitation Counselor to (1) reviewing the plaintiff's medical records, (2) conducting an extensive interview and examination of the plaintiff on multiple

---

[22] La. Code Civ. Proc. art. 1425(F)(1) ("Any party may file a motion for a pretrial hearing to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence."). *See also MSOF Corp. v. Exxon Corp.*, 2004-0988 (La. App. 1 Cir. 12/22/05), 934 So. 2d 708, 718 ("It is important to note, however, that there is a crucial difference between questioning the methodology employed by an expert witness and questioning the application of that methodology or the ultimate conclusions derived from that application. Only a question of the validity of the methodology employed brings Daubert into play. Additionally, *Daubert* concerns admissibility of the expert's opinion and not his qualification as an expert in the area tendered.") (emphasis added); *Dinett v. Lakeside Hosp.*, 2000-2682 (La. App. 4 Cir. 2/20/02), 811 So. 2d 116, 119 ("It is important to note that *Daubert* comes into play only when the *methodology* used by the expert is being questioned. . . . *Daubert* is inapplicable to the instant situation because it is not the experts' methodology that is being questioned; rather, it is the conclusions they reached in applying that methodology to the instant facts.") (italics original).

[23] *MSOF Corp. v. Exxon Corp.*, 2004-0988 (La. App. 1 Cir. 12/22/05), 934 So. 2d 708, 718 ("It is important to note, however, that there is a crucial difference between questioning the methodology employed by an expert witness and questioning the application of that methodology or the ultimate conclusions derived from that application. Only a question of the validity of the methodology employed brings *Daubert* into play."); *Dinett v. Lakeside Hosp.*, 2000-2682 (La. App. 4 Cir. 2/20/02), 811 So. 2d 116, 119 ("It is important to note that *Daubert* comes into play only when the *methodology* used by the expert is being questioned. . . . *Daubert* is inapplicable to the instant situation because it is not the experts' methodology that is being questioned; rather, it is the conclusions they reached in applying that methodology to the instant facts.") (italics original).

occasions, and (3) and meeting with and interviewing Ms. Sholas' treating physicians, some on multiple occasions. Of course, this methodology is widely accepted by the courts as reliable.[24]

Perhaps well aware of the weakness of their position regarding Ms. Peralta's qualifications and methodology, the defendants attempt to challenge Ms. Peralta's opinions on two completely *Daubert*-unrelated grounds. They argue that Ms. Peralta considered evidence that was obtained directly from Ms. Sholas, which they claim is contradicted by certain records. However, this does not provide a basis for a valid *Daubert* Motion. Experts are certainly allowed to regard and\or disregard conflicting evidence in a case to reach their conclusions. Ms. Peralta obviously relied on her extensive interviews with Ms. Sholas to reach her conclusions. Defendants' motion attempts to point out inconsistencies with the information provided by Ms. Sholas and records that they obtained. While this certainly may provide a basis for cross examination, it does not provide a basis for a *Daubert* Motion. Moreover, in multiple interviews with Ms. Sholas, it was discussed that she planned to eventually become a registered nurse and the actions she was taking to become one. Ms. Peralta's report makes it very clear that she was not yet qualified to be a nurse but planned to work toward that ultimate goal. If ultimately the trier of fact disagrees with this proposition, then this wage-earning capacity would not likely be accepted by the Court. However, if the Court, after hearing Ms. Sholas testimony and reviewing all of the evidence believes that Ms. Sholas had the capacity to eventually become a registered nurse but for her injuries, then the wage earning capacity of the registered nurse should be used to evaluate her loss of earning capacity. Ultimately, the Court will be the trier of fact in this matter and will have to decide which evidence to accept between alternative conflicting evidence. However, it does not provide a basis for a *Daubert* challenge since Ms. Peralta's methodologies are standard and accepted methodologies applied by vocational rehabilitation specialists routinely.

In fact, the Court need look no further than the Defendants' own experts for proof of the concept that experts can use conflicting evidence. Whereas Ms. Peralta relied on the medical records and multiple conferences with Ms. Sholas' treating physicians, including neurologist, Dr. David Weir, orthopedic surgeon, Dr. Louis C. Blanda, neurosurgeon, Dr. William Brennan, physiatrist, Dr. Alvin Wickboldt, and orthopedic hand surgeon, Dr. Darell L. Henderson, ***the***

[24] *E.g.*, *Thomas v. PFG Transco, Inc.*, 501 F. Supp. 3d 437, 442 (E.D. Tex. 2020) ("A witness' experience, studies, and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony."); *Cooper/T. Smith Stevedoring Co., Inc. v. Bright Navigation, Inc.*, 2019 WL 12528990, at *6 (E.D. La. 2019); *Richardson v. SEACOR Lifeboats, LLC*, 2015 WL 2193907, at *3 (E.D. La. 2015); *Stewart v. Quality Carriers, Inc.*, 2021 WL 2708924 at *5-6 (M.D.L.A. 2021).

***Defendants experts relied only on the single AMO done by Dr. Douglas Bernard.*** As this Court is likely aware, Dr. Bernard has been criticized by numerous Courts. In fact, many local judges have prohibited Dr. Bernard from even doing AMO's due to his history of bias and impartiality. In fact, one such judge from the judicial district in which Dr. Bernard's office is located (Iberia Parish) has barred Dr. Bernard from doing AMO's altogether. He literally allowed the Defendants to have an AMO with ***any doctor, other than Dr. Douglas Bernard.***[25]

> The Court, having considered the Motion to Compel an independent medical examination with Dr. Douglas Bernard, together with the law, evidence, and memorandum on file in support of said motion, along with the arguments of counsel, hereby adjudges, orders, and decrees:
>
> The Motion to Compel a physical examination with Dr. Douglas Bernard is hereby DENIED. It is further ordered that defendants, DANIELLE PETERSON, ADVANCED RADIOGRAPHICS, INC., and HALLMARK SPECIALTY INSURANCE COMPANY, are allowed to seek an Independent Medical Examination with another physician, other than Dr. Douglas Bernard, in a reasonable geographic area.
>
> DONE and ORDERED in New Iberia, Iberia Parish, this 14 day of Sept. 2017.
>
> /s/ Keith R.J. Comeaux
> DISTRICT JUDGE
>
> Filed: Sept 14, 2017
> Signed: [illegible], Dty. Clk.
> A TRUE COPY
> ATTEST: [illegible]
> Dty. Clerk of Court
> Iberia Parish, La

Numerous other judges, including several judges in the 15th Judicial District Court have also barred Dr. Douglas Bernard from conducting AMO's as well due to his extensive history of bias and partiality.[26]

Despite Dr. Bernard's extensive history of bias and partiality, Defendants' expert relied solely on his report and conclusions. Thus, both of the experts in this case have relied on differing evidence as the basis of their conclusions. It doesn't make their opinions excludable under *Daubert*. Accordingly, there is no basis under *Daubert* to exclude the report of Ms. Peralta (or Dr. Rice's report which relied on her report). In sum, there is no flaw in Ms. Peralta's methodology or the applicable legal standard she employed in reaching her opinions.[27] The Defendants' *Daubert*

[25] Exhibit B – Judgment signed by Judge Keith Comeaux on September 14, 2017.

[26] Exhibit C – Multiple Judgments excluding and limiting Dr. Douglas Bernard.

[27] *Fuselier v. Everest Nat'l Ins. Co.*, 2021 WL 3179810, at *3 (W.D. La. July 26, 2021) ("Here, Dr. Cowen testified that his opinions are based upon his review of Plaintiff's medical records as presented by treating physicians, his MRI studies, as well as his telephonic interview of Plaintiff. [] Dr. Cowen's report further explains that in formulating his opinions, he considered published literature and relied upon his 'education, training, skill and professional experience as a practicing medical doctor, Board Certified Physical Medicine & Rehabilitation Specialist, Board Certified Pain Medicine Specialist, Certified Life Care Planner and Certified Physician Life Care Planner, as well as a reasonable degree of medical probability.' []. Thus, the Court is satisfied that Dr. Cowen used his expertise as a licensed medical doctor and a certified physician life care planner in formulating his opinions regarding Plaintiff's future medical treatment needs, and those opinions appear to be supported by either the cited medical records of Plaintiff's treating physicians or an arguable standard of care.").

motion—which is not a *Daubert* motion at all, but rather a criticism of the evidence which Ms. Peralta relied—should be denied.

**2. Dr. Rice's Testimony is Equally Admissible**

Finally, the Defendants are also seeking to exclude the report of Dr. Rice who formulated the present value assessment of Ms. Peralta's Life Care Plan. As noted above, Dr. Rice's opinions are perfectly admissible, reliable under *Daubert*, and will undoubtedly aid the Court in this case because—without Dr. Rice's expertise —it would be virtually impossible for the Court to estimate the value of the plaintiff's life-long medical needs and future lost wages. Therefore, the defendants' challenge to Dr. Rice's opinions should be denied as an extension of this Court's denial of the defendants' motion on Ms. Peralta.

Any challenges that the Defendants raised to Ms. Peralta or Dr. Rice's opinions only go to the weight and not to the admissibility of their testimony. To the extent that the defendants disagree with these experts' opinions, that is nothing more but fodder for cross-examination. The Defendants' motion lacks merit and should be denied.

**CONCLUSION**

The Defendants provided this Court with no reason, much less a persuasive one, to exclude Ms. Peralta and Dr. Rice. Accordingly, their motion should be denied.

Respectfully submitted,

**O'PRY LAW FIRM**

BY: ______________________

**DONOVAN J. O'PRY, II (#28178)**
**BERNARD R. MINYARD (#36231)**
**GRANT J. BRATCHER (#39818)**
2014 W. Pinhook Rd., Suite 507
Lafayette, Louisiana 70508
Phone: (337) 415-0007
Fax: (337) 504-7766
*Email for All Service of Process:*
service@opry law.com
*Email for All Other Communications:*
donnie@oprylaw.com
**ATTORNEYS FOR PETITIONER, DEANNA SHOLAS**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record by electronic mail, facsimile, hand delivery, private courier, and/or by depositing same in the U.S. Mail, properly addressed, postage prepaid.

Lafayette, Louisiana this 10th day of May, 2024.

Donovan J. O'Pry, II

**DONOVAN J. O'PRY, II**